Thank you. Please be seated. Good afternoon. This next case is Case number 4-16-0285 In re the Marriage of Lynn Walker and Clark Walker. Pairing for Appellant is Attorney Dawn Wall and Appellee of Pairing, Clark Walker. Good afternoon. Counselor, are you ready to proceed? Yes. Alright. Ms. Wall, you may. May it please the Court. Counsel, my name is Dawn Wall and I am here on behalf of the Petitioner Appellant, Lynn McLeod. We are here before your Honors today on review of a decision by the trial court granting a petition to modify maintenance that was filed by Mr. Walker. And in that particular petition to modify, Mr. Walker was seeking to modify a maintenance provision on the basis of a substantial change in circumstance, including his financial assertions of a change as well as the change in the statutory maintenance provision in the State of Illinois. I would assert to your Honors that the trial court erred in finding that the plain language of the Marital Settlement Agreement executed by the parties in May of 2008 was ambiguous. And I believe your Honors have the ability to review that issue on a de novo basis. The trial court found that there was ambiguity in the parties' Marital Settlement Agreement with respect to what each of them intended with respect to maintenance. I would draw your Honors attention to paragraph 9 of the Marital Settlement Agreement. The parties specifically bargained for maintenance being for a particular period of time and at a particular amount. In fact, the maintenance provision provides that Mr. Walker shall pay maintenance and it shall be done in the manner that it will be paid twice per month, $3,000 each month, that it would be or shall be taxable to the petitioner and deductible to Mr. Walker, and that it shall terminate in accordance with the statutory provisions set forth under 510C. And it goes on to indicate those statutory provisions would include remarriage, cohabitation, or death. I would assert to your Honors that that particular language, providing that the maintenance payments would be paid for not longer than 120 months, was a durational term that met its maximum unless the petitioner had committed any three of the contingencies set forth under the statute. So, if Ms. McLeod had cohabitated, if Ms. McLeod had remarried, or she had become deceased prior to the expiration of that 120-month period, then the in any other scenario, I would assert to your Honors that that durational term was non-modifiable and that all of the terms of the Marital Settlement Agreement were non-modifiable. Now, counsel will argue that because that particular paragraph 9 doesn't state with specificity this paragraph is non-modifiable, that in fact it can be modified. And I would suggest to the contrary, I think this Court's decision in the Schweitzer case certainly validated that a party doesn't have to state in each and every paragraph of an agreement that unless we state it in this paragraph, the agreement is going to be assumed to be modifiable. In this particular case, the Marital Settlement Agreement negotiated between these parties within a three-day period did provide that the terms of the Marital Settlement Agreement were only modifiable by mutual agreement and consent of the parties. That's in paragraph 13 of the agreement. Also, the recitals to the agreement specifically state on the first page of that agreement that the parties are forever determining maintenance. So I would assert to your Honors that if we consider the entirety of the language of the Marital Settlement Agreement that in fact it shows by the plain language of the agreement that it was not modifiable. That these parties negotiated as part of their Property Settlement Agreement in their marriage in 2008 that Ms. McLeod was going to be entitled to receive $3,000 twice monthly until June of 2018. Now, the trial court, when the petition to modify was filed, we did actually file a 2619 motion to dismiss. And we asserted that the plain language of paragraph 9 of the agreement was not open to interpretation. The trial court found that there was an ambiguity in the language. I would assert to your Honors that there is no ambiguity. But aside from that, the trial court decided that we had to look beyond the agreement and look at the intent of the parties. I would assert to your Honors that intent is not even relevant unless we can't give meaning to the plain language of the agreement. And I think in this instance, it's very easy for the parties to move forward and conclude the maintenance obligation as anticipated June of 2018 unless one of the three conditions under the statute that is specifically referenced in the agreement occurs. Now, the trial court decided we needed to put on evidence. I renewed my objection to going beyond the plain language of the statute when we went to trial. There was, however, testimony put on with respect to the intent of the parties relative to this paragraph 9 of the maintenance agreement. And I would assert to your Honors that even if we considered the intent of the parties, the evidence that was offered at trial established that this particular maintenance provision appeared in the same fashion, in the same language in each of the three marital settlement agreements that was exchanged between the parties. And that it clearly comports with the other terms of the marital settlement agreement with respect to modifiability. I lost that argument at the trial court. The trial court decided that there was an ambiguity and that, in fact, there was a provision of paragraph 9 that was subject to modification. Now, the trial court agreed with me that the amount of maintenance could not be modified and that the language of paragraph 9 prohibited any modification to the $6,000 per month. And yet, the trial court said there's an ambiguity with this provision that says not longer than 120 months. I would suggest that there is no ambiguity to that phrase if you read it in the context of paragraph 9. And the only reason that that durational limitation was put into the agreement is because of the three contingencies that the parties recognized. I think it is significant that when this agreement and the maintenance provision was drafted, that sub-paragraph A of paragraph 510 of the Dissolution Act was not even mentioned with respect to allowing modification in instances of a substantial change. And if we take the trial court's decision allowing only the duration to be changed and going that one step further and saying the duration is the only term that can be changed, it can only be modified, and frankly the only way that it can be modified is down versus up. So, if Ms. McLeod found herself today or in June of next year completely disabled and unable to work under the provisions that the trial court utilized in reaching its conclusion and its order, Ms. McLeod would have no ability for further maintenance because the durational term was not modifiable up, it was only modifiable down. Well, I would assert, Your Honors, that that's an issue. If a particular term is subject to modification, I would assert it has to be modifiable in its whole instance. You can't simply say, okay, we have a ceiling in this agreement and the plain language of the Act, or the agreement, makes the ceiling 120. But, if we're going to consider substantial change of circumstance to lower the ceiling, then the counter has to be true and has to allow for that ceiling to be lifted and modified in the event of a substantial change of circumstance for Ms. McLeod. So, it's my belief, and I would assert, that the plain language of the marital settlement agreement is not open to that interpretation. It's not modifiable, which is consistent with paragraph 13, which is also consistent with the initial provisions of the agreement indicating the party's way of maintenance, and it's also consistent with paragraph 18 that says the court is reserving jurisdiction to enforce the terms of the party's agreement. The provision does not say that the court shall retain subject matter jurisdiction, which is generally the language that is included when parties want the opportunity to come back to the court for maintenance or child support issues. Section 502F states that the judgment may limit modification of maintenance. 502B says that the terms of the agreement between the parties are binding on the court unless it finds the agreement is unconscionable. At any point did either party ever request that the agreement be found unconscionable? No. There was nothing requested in June of 2008, I'm sorry, May of 2008, and in fact there was a subsequent proceeding that took place before Judge Pacey, where the parties had an issue with respect to the purchase price of the home. And so they were in front of Judge Pacey on three different occasions. Ultimately, the modification that occurred on the price of the home was stipulated to by the agreement of the parties. But I would assert, Your Honors, that if either of them had any issue with the unconscionability of that agreement, that would have been their opportunity to raise it at that time. And certainly Ms. McLeod is not trying to back out of the agreement that she made in May of 2008. The parties negotiated as part of their property settlement agreement, each of them were essentially taking half of a residences, bank accounts, 401k accounts, and as part of that global resolution of all the issues, I would assert that they agreed in a manner that is set forth in paragraph nine as to what the maintenance was going to be. So, I do not believe that there is any evidence to establish that either one of them asserted that this was unconscionable. There's a voluntary undertaking  that the parties were voluntarily entering into this agreement and understood its contents. So, I would assert that there is no basis for the parties to now assert that it's modifiable because the deal I made back then doesn't comport with the finances that I have currently. Just very briefly, Your Honors, I don't believe there's any reason to look beyond whether or not this agreement is modifiable. I do, and we give consideration to the assertions that Mr. Walker made about a substantial change in circumstance. I do not believe that the evidence that was proffered at the trial supports the finding by the trial court that there was indeed a substantial change in circumstance. I understand my burden is high in having that overturned by this court, but I do believe the evidence that was offered is against the manifest weight of what the trial court found here. Very clearly, the trial court agreed that this was not rehabilitative maintenance, that this was maintenance for a specific period of time, but in reaching that conclusion, the trial judge did consider the change in circumstance that Mr. Walker asserted. Essentially, Mr. Walker claims that in 2008, his portion of the family's earnings was about $200,000, and that in 2015, his portion of the family earnings at that point was $135,000. That certainly is a change in his annual income, but historically, over that seven-year period, his income ebbed and flowed, and I think what the trial court ignored is that in June of 2008, Mr. Walker was agreeing under the terms of the agreement to respect to one residence, and he was also paying other credit card debt, other debt of the marriage. When he testified in 2015, or the end of 2015, he indicated that his only obligation for his household expenses with his new wife were minimal. He paid his car payment, he paid $210 to his 401k, and he occasionally contributed to groceries. So if we're going to consider the change in his income, then I think correspondingly, we also have to consider the change in the extent of the expenses that he was paying. I would further assert, to your honors, that the change in the financial picture for him is completely within his own control. He did now have office personnel that he was required to hire. That was not the case when he was married to Ms. McLeod because she was doing a lot of the legwork in his office. And so a portion of the family earnings was attributable to what she was doing, but she wasn't getting those wages on a W-2. So she did not receive any Social Security benefit as a consequence of that. That is further support for the maintenance provision that was agreed to between these parties. Because Ms. McLeod, when she left the marriage, not only left the spouse who was sharing expenses with her, but she also lost her employment that she had been working for a 20-year period. This was a 20-year marriage. These parties within a three-day period of filing the dissolution negotiated the terms of a marital settlement agreement. I would assert to your honors that the agreement was drafted by Mr. Walker. There is evidence that was offered at trial that three different drafts went back and forth and that Mr. Hammer had attended the hearing for the court to affirm and grant the judgment of dissolution of marriage three days after the divorce was filed. But I would suggest, your honors, that the fact that there was no change made in this marital settlement provision supports our assertion that the parties agreed to it, that the parties understood it, and that it's now unfair for Mr. Walker to be able to gain advantage by now asserting that that's a modifiable term. On that basis, we would ask that this court would reverse the decision of the trial court and find that there is no ambiguity to paragraph 9 as it would compare to the rest of the marital settlement agreement. And I would ask that the decision be reversed and that the petition to modify be denied because it was not proven on its face. Thank you. Thank you, Ms. Wall. Mr. Walker. May it please the court, counsel, I'm here before the court today in an unusual circumstance to argue a case that affects me directly as opposed to another litigant. I've practiced law since 1998. I've been practicing law for now coming on 30 years. In the course of that time period, I've handled in excess of 2,000 divorces. I've drafted marital settlement agreements that included the same language we're talking about, and for the first time in 2015 was it ever asserted that this particular agreement, that terms of that paragraph meant that terms of maintenance was not modifiable. In addition, other attorneys in McLean County and across the state have likewise used that similar language which puts us on a very slippery slope. How about saying what you mean instead of just copying prior language to avoid this issue, counsel? I agree, Your Honor. Now in hindsight, in terms of looking at what Schweitzer indicates, obviously it would be better language. Ultimately, the language I've used over the course of the years of practicing law when I've intended for a non- modification of maintenance is language directly in the paragraph related to maintenance. That's essentially the genesis of the argument that's before the court on a legal basis. Schweitzer is an interesting case, and I'm aware it's been decided before this court in Schweitzer, which is a critical issue. The parties agreed to essentially co-opt out or eliminate provisions for termination of maintenance as it related to cohabitation or remarriage. It's that paragraph read in relation to the generalized paragraph saying it's non-modifiable where the court indicates that that was the intent to deviate under 502F. There is no language in paragraph in the maintenance provisions here indicating that we're co-opting out provisions of the marital settlement agreement. I will indicate to this court I directly disagree with some of the facts that have been represented. First and foremost, the language of this particular agreement says commencing with the first payment on June 15, 2008, the respondent shall pay the petitioner as in for spousal support the sum of $6,000 per month for a period of not more than 120 months and shall be paid monthly installments of $3,000. It's that language of not more than 120 months. What's been omitted is that frankly there was a reason why there was concerns about either the security of the income that would be coming into the firm post-divorce. My parents both passed away by 38 for my father and by 54 for my mother. There was some uncertainty as to life expectancy. There was also a great deal of dependence upon an advertising and marketing regimen that was essentially being phased out and discussed at trial. These are excellent points which counsels for not including the language, this agreement may only be amended or modified by mutual agreement of the parties. Your Honor, frankly I'm aware there's an assertion that we shouldn't have superfluous language and that would otherwise require redundancy to say it throughout the agreement. The reality of it is judgments for divorce and marriage and marital settlement agreements and now the new parenting plans that are going on, they restate provisions concerning I assert that paragraph related to the non-modification of property-related provisions. Now, it's my position that that's a restatement of what the IMDMA already indicates, as is the relocation provision. This agreement may only be amended or modified by mutual agreement of the parties seems to suggest it may be only amended or modified by mutual agreement of the parties. Well, then we would never have a trigger for the less than 120 months as noted by Judge Hill and ultimately That's a different issue. In all candor, Your Honor. Why is it there? It's there as a reference to the property provisions. It's there for those provisions and in all honesty, I believe that the standard set forth in Schweitzer is frankly not good law. And I'm dancing on dangerous ground here, but I'm going to say in my opinion Simmons, Sutton, the other cases that say you should specifically state a clear intent within the marital settlement agreement, within paragraphs related to maintenance, that's where it should be set forth. We have parenting agreements now that say that outlines the relocation requirements. Well, you know something? That would be superfluous. We have judgments for disillusioned marriage saying the courts retain jurisdiction for purposes of enforcement. That's restating and being superfluous. The reality of it is in this particular case in Sutton, which was taken up by this Supreme Court ultimately, it dealt with the third district case where they said you know something? You need language specifically in that paragraph. Bryant had language specifically in that paragraph. Schweitzer had language specifically in that paragraph. There's not a single case out there that says you can have some generalized paragraph except for Schweitzer that says and holds that that's sufficient to demonstrate a clear intent. How about the rule, don't say things you don't mean? How would that work? Your Honor, I'll confess. Now that this issue is raised in front of me, I'm recognizing that it would have been a better practice for us to not have that paragraph in. See, I mean, you know, we're speaking the English language here. How about the rule before you wrote it, don't put things in you don't mean? Well, ultimately, I take issue with some of the this marital settlement agreement wasn't just three drafts and it wasn't put up over the course of three days. How does that matter? The testimony ultimately that it was redrafted a number of occasions. How does that matter? Ultimately, there was a provision within the maintenance provision that said this would be subject to a substantial change of circumstances. And it was indicated in my testimony at trial was that Mr. Hammer turned around and said, well, that's already part of the statute, so we don't need to have that in there. Now, then it's latched on by the petitioner saying, well, then that was negotiated. In all candor, Your Honor, it was not my expectation then nor it is now that that language would trigger that maintenance would be non-modifiable. We may disagree, but ultimately, there's still the language saying not more than 120 months. There's no way an argument can now be made that the 120 months would be shortened if it would be a statutory termination of cohabitation, remarriage, or death. That would be stating the obvious in and of itself. Now, in my opinion, the case law that supports this ultimately in Sutton, this court in Scott, this would be right here, said, you know, Simmons and Sutton, they're good law. And that's the basis for deciding exactly how we properly announce and enumerate whether or not maintenance is non-modifiable. The amazing thing is Schweitzer relies on Scott. And Scott's not saying, gee, you know, in specific states, I believe the Simmons language said it specifically states that you had to have a provision in there indicating that there was a specific intent to modify this particular maintenance. Now, with that said, I want to get on both the secondary aspect. In 2007, I had income of $254,000. In 2015, I had income of $135,000. In 2014, I had income of $143,000. That's where the substantial change in circumstances occurred. Ultimately, the amazing thing was there was criticism that we had cut down overhead expenses. But if you look at the gross receipts that were $458,000 in 2007 and were all the way down to $250,000 in 2015, had I not cut down my overhead, I literally would have had $50,000 to pay entire maintenance. Ultimately, the maintenance cost $82,000 a year. $72,000 for the maintenance and $10,000 for Social Security and Medicare. In 2013 and 2014, the respondent was taking home in excess of $110,000 of income and my income was at $50,000. Despite that, ultimately, I tried to hold out and then sought to file a Petition of Modify in this particular cause. That Petition of Modify sought and said, there's a change in circumstances. Did I indicate that my income went down? Yes. Ultimately, the petitioner in this particular case had a job making $42,000 a year, which she just voluntarily quit. What was the explanation for quitting a $42,000 a year job? She wanted to finish her novel, Loving Strangers by God, that was completed in May of 2015. By the time we got to trial, she indicated she hadn't even sought employment. Any efforts to seek employment for a period of eight months, despite the fact that this was pending before the court. Instead, she was given free Christian-based mentor counseling with the hope that she would then be able to monetize that or collect royalties upon the book that she had signed a publication contract in January of 2016. Ultimately, that publication went live in May. It was supposed to go live in May of 2016. This court afforded her the opportunity, both in recognizing she could make money as demonstrated by her jobs. She went four years without working at all from 2008 to 2012. In 2012, between 12 and 15, she worked at three different employers and ultimately left each and every employer. She concealed having quit that employment and changed her testimony only at trial, saying I voluntarily, she answered interrogatory saying I left my employment without cause, or I was terminated without cause and then said she terminated her employment without cause. I ultimately believe that the trial court looked at these circumstances and said hey, you've had an opportunity to make yourself self-sustaining. I'm going to give you an opportunity for another eight, nine months from the March order all the way to the end of 2016 to be self-sustaining and get yourself on your feet in terms of your publication of your novel, your certification and monetizing her Christian-based counseling and ultimately to return to the workforce that she essentially had abandoned. In this particular instance, there's been now $618,000 in maintenance paid over the course of eight and a half years. It's not an insignificant amount or opportunity for her to have been able to make herself sufficient. This was a 19-year, eight-month marriage. This was a 12-year employment. The testimony in trial was that she would receive favorable referrals by me at trial for jobs subsequently sought. Ultimately, in this particular case, it wasn't like she walked out and was referencing the 20-year employment that she lost and it was in fact a 12-year employment. She had employment previously. She graduated with honors from SIU with a degree in marketing and advertising. In this particular instance, Your Honor, it's my assertion, this court did not abuse its discretion and commit an error as a matter of law as it relates to the determination that this was non-modifiable in nature. I believe the court found and ultimately decided I'm going to have to decide, do I find it is in part non-modifiable and that would be as to amount and determine that ultimately the duration was subject to modification. Frankly, if the court had modified her maintenance to $3,000 a month and given me 13 months of retroactive relief, which was the duration of time between when the petition was filed and when it was ultimately ruled upon, the result would have effectively been exactly the same given the offsets that would have occurred either amortized over the period. The only difference was instead of being paid $3,000 a month less offsets for retroactive relief for the period of essentially March until June of 2018, the court said I'm going to give you $6,000 a month through the end of 2016 and you're on your own after that. It effectively put her in exactly the same position as if the court had modified the amount to $3,000 a month and moved it back to when the petition was originally filed. It gave the parties also an opportunity to get through this process so we're here today. I don't believe that this court missed the boat. We can disagree on that particular aspect, but I believe that ultimately when it comes to the non-modifiability of maintenance, it ought to be in the paragraph. That is the better language that even was referenced within the Schweitzer decision. In this particular instance, that is not the practice that's going on right now in Illinois. What the practice is, is to put it in the paragraph, not to apply some generalized paragraph that may be in the body of the marital settlement agreement altogether and argued as it applies to maintenance. Those same provisions were in other cases that have been appealed before this particular court and not raised by counsel for the petitioner. I would suggest to you that ultimately in the case of Schweitzer, to say it's ridiculous to have it in every single paragraph is ignoring the fact that they had a specific provision in that paragraph that directly said here's a basis for non-modification. If that's the scenario in this instance, that relates to ultimately whether or not it would also there's no excising out the less than 120 months. If it was intended, if it just simply said I'm going to pay maintenance for 120 months at $6,000 a month, frankly there would be no argument here. The argument would be a lot stronger on the other side of the fence and I think frankly Judge Hill would have turned around and granted that motion to dismiss and denied our pleading. But that's not what it stated and it was there for obvious reasons because ultimately the faiths of law practices change. There was a study that was admitted into the evidence that indicated that solo practitioners have gone down by as much as 40% over the course of time since 2008 to 2015. That was noted by the court. Mr. Walker, wouldn't 502B allow you the ability to seek a finding that that paragraph is unconscionable as it relates to maintenance? Frankly, Your Honor, had I sought unconscionability, whether it was within two years or after two years, honestly that would have been something that would, the first two, three, four years after the divorce I accepted what the amount of maintenance that was ordered in pay. As my income substantially decreased that I've altered and said I can't continue to do this. Literally, it got to the point where had I still remained in the marital residence and the standard of living that I would be purported to enjoy during the course of the marriage, I would have been bankrupt five years ago. The reality of it is I couldn't sustain that then nor now. In fact, the expenses that are related to my financial affairs affidavit, what was noted, is exactly on point. There is no excess money to continue this process. In this particular instance, Your Honor, I'm going to make clear one thing. The petitioner relies heavily on DUNSA. I looked at the facts of DUNSA. It's amazing because DUNSA says the petitioner would have had an obligation to rehabilitate her earning capacity and mitigate her needs for maintenance. Frankly, she didn't do that by taking four years off and then pursuing a theology degree that she got a year and a half into before quitting and then ultimately taking jobs that she quit in succession. The facts in DUNSA are extremely divergent to ours. In DUNSA, the court said you can't come in and ask for relief. He was asking for modifications of his obligation for maintenance that was on temporary relief. He didn't wait eight years to seek a modification like I did. He had a reduction of his income from $40,000 to $25,000, but basically his maintenance obligation represented 5% to 8% of his income. When we were divorced, it represented 28.3% of my income. Ultimately, now it represents 55% of my income. I looked at the new statute in part when it was changed and I considered that and made a demonstrative exhibit to demonstrate how much I would have paid had it gone over the course of time. Ultimately, I overpaid to the tune of about $180,000. The reality of it is that's water over the bridge. That ultimately would go to the fact that I would have a longer term of maintenance if it was also under the statute. It would actually be 15 years, 8 months, give or take. With that said, the point of that demonstrative exhibit was also to show the decrease over the time of income and how much was paid even though there's no 20% offset for the petitioner for many years when she's unemployed or in theology school. In this particular instance, I believe, Your Honor, the facts are divergent in this sense. When maintenance was originally set, the change of circumstances for me occurred over the course of 8 years as opposed to what happened in Dunsif. There was no findings of contempt that Dunsif court found. In Dunsif, the court said he's constantly in contempt because he's not paying the child support. He took on his girlfriend, gave her a job, was giving her raises although he was asking for the maintenance to drop. For clarity's sake, it's a gross misrepresentation by petitioner's counsel to say I did not have a secretary in 2008. That is flat out misstated. I had a secretary by the name of Lawrence Schweitzer whose income was $34,000 a year. Ultimately, it wasn't like the petitioner was doing that particular work. I now have a legal assistant who's doing half the job Lynn was doing and Lawrence Schweitzer's job and he's making about $46,000, $47,000 a year. If you adjust from 2008 to 2016 at 3% that pay and take into account the additional responsibilities, it's not even a marginal comparison. The amazing thing is they want to ignore basic facts. I understand my reply brief was ultimately stricken but there were facts that were critical within that process that should not be ignored. Ultimately, in that the appellate courts in Brent turned around and said it's non-modifiable because they had a specific mechanism that there wouldn't be increases in maintenance at all and the decreases in maintenance would be on a formula-based system. Those are the guide points in which individuals and practitioners are turning around and ordering and setting up marital settlement agreements. They're not doing it based on some catch-all category paragraph saying this entire thing's non-modifiable. I can tell you there's a lot of attorneys over in McLean County right now who are sitting there redrafting their marital settlement agreements. It's not just Clark Walker. It includes the firms of Thompson Weintraub, Helen O'Farr, and you name it. The reality of it is, in this instance, to interpret this paragraph the way it's being argued is going to open up Pandora's box. It's going to create that slippery slope and in this instance, it's going to create an inequitable interpretation of an agreement. For clarity's sake, it was represented by Petitioner over and over that Don Hammer had no involvement or little or no involvement in the drafting of the marital settlement agreement. Alright, Mr. Walker. You are out of time. Thank you. Ms. Wall. Very briefly, Your Honors. I think it's significant that counsel makes reference to the fact that this provision in paragraph 13 providing that this agreement is only modifiable by agreement or consent of the parties, only applies to property rights. Well, that's exactly where the maintenance provision is. So, if we take counsel for his assertion that that is only applicable to the property rights, he then is trying to cherry pick in this agreement. So, we can't make any changes with respect to the Wachovia counts. We can't make any changes unless they're agreed to with respect to the marital residences. But that particular provision in paragraph 13, in isolation, doesn't apply to paragraph 13. And I don't believe that this Court has ever condoned that we should only look at the maintenance provision and not look at the other provisions of the agreement. And in fact, in Brent, in Schweitzer, when this Court was considering the Brent decision, it was let's look at the entirety of the party's intent. And in this instance, I wasn't in the courtroom in 2008. I didn't draft this agreement. I didn't have input into this agreement. But Mr. Walker did. And Mr. Walker provided in paragraph 13 that the parties were reaching an agreement that was only to be modified by agreement or consent of the parties. So, I would assert in this instance that he was stuck with that maintenance provision. Now, counsel can argue to you that Lynn McLeod did not make steps in her workforce to prepare for no longer having maintenance. But as the trial court, I think, correctly determined, this was not a circumstance where maintenance was ordered on a rehabilitative basis. Ms. McLeod agreed, as part of a property settlement agreement, that she was going to receive the sum of $6,000, $3,000 twice monthly until June of 2018. And she testified at trial that her plan comported with that timeline. And yet now, counsel says, because of his change of circumstance financially in his earnings, she is supposed to go from $6,000 in income per month as of December 31, 2016 to $0 this month if the trial court's decision is honored. And so, counsel can say, well, he was only having the ability to spend about 50% of his earnings. Ms. McLeod is going to go from $6,000 a month to $0. And when she negotiated this deal in June of 2008, she understood that she had a 10-year out. She agreed not to seek permanent maintenance. She agreed to not seek a longer time period than the 10 years that was provided in the agreement. And these parties negotiated that. I would further mention that counsel did, during his testimony at trial, acknowledge that at one point there was a provision in the agreement that said it was modifiable due to a substantial change of circumstance. And that language was taken out. So, I believe we have to be governed by the plain language of the agreement. I don't believe there was any evidence to suggest that there was any ambiguity that required anybody to go behind the agreement and consider what the party's intent was. But in this instance, the plain language and the evidence at trial showing the intent was one and the same. The parties agreed to a 10-year term unless one of the three conditions specifically mentioned in paragraph 9 occurred. Finally, I will just mention, counsel suggests that I was somehow misrepresenting the facts with respect to what Lynn McLeod did. I only mentioned her service to the law firm at the value counsel put at $40,000. She herself said $60,000 because I do believe that is significant with respect to counsel saying I was earning $254,000 in 2008. Well, that isn't true because Lynn McLeod had credit in their family for some of those earnings, even under his testimony. So, I certainly didn't mean to suggest that there were no other personnel in his office in 2008. But certainly Lynn's contributions to the office were significant in 2008 because you had to back that out of his earnings that he asserted. His earnings in 2008 were about $198,000 based on his tax return and were about $135,000 in 2015. But again, his family household expenses that he was responsible for, were half. On that basis, I would  Alright, thank you both. The case will be taken under advisement and a written decision shall issue.